IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James Parker Byrd, ) | C/A No.: 3:09-609-JFA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| Trans Union LLC; Experian ) | |
| Information Solutions, Inc.; and Equifax ) | |
| Information Services, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Through this action plaintiff James Parker Byrd ("Byrd") seeks to recover against Equifax Information Services, Inc. ("Equifax") for alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Two other defendants to this case, TransUnion, LLC and Experian Information Solutions, Inc. have settled and are no longer parties to the case. Equifax previously moved for summary judgment (Dkt. No. 74), which was denied on account of genuine issues of material fact. Currently before the court are Equifax's two motions in limine and Byrd's motion in limine. The court conducted a hearing to receive oral argument on the motions in limine on June 17, 2010, where the court ruled on a number of the motions and took several under advisement. The court thereafter called a conference call, on the record, which began at 11:00 a.m. on June 18, 2010, and where the court announced its rulings on the remaining motions, save one. This order serves to memorialize those rulings of the court as announced during the June 18 conference call.

I.   Byrd's Motions in Limine

The court ruled on Byrd's motions numbered 1, 2, 3, 4, 5, 7, and 8 at the hearing and the reasons for those rulings are adequately stated on the record and will not receive further attention here.  The court took Byrd's 6th motion in limine under advisement, which seeks "to exclude Equifax from offering evidence regarding the accuracy of Equifax's credit reports generally, or any statistics, studies, reports or other data regarding the accuracy of its credit reports."  Equifax stated at the hearing, and on the conference call, that it did not seek to introduce evidence regarding the accuracy of its credit reporting.  Accordingly, the motion is moot to the extent that it seeks to bar what Equifax does not seek to offer.

Byrd also seeks to prevent any of Equifax's witnesses from opining on the accuracy of its credit reporting system generally, or testifying to the effect that Equifax "has an accurate system."  The question before the court is whether Equifax "follow[ed] reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," namely, Byrd.  15 U.S.C. § 1681e.  Accordingly, the court finds that any reference to the general effectiveness of Equifax's policies and procedures is irrelevant to this inquiry.  This ruling does not foreclose Equifax from offering testimony concerning its employee's beliefs as to the reasonableness of its system, based on their experience, nor does it prevent Equifax from discussing the relative merits of various procedural options.  This ruling only prohibits statements to the effect of "our system works."  Should Equifax introduce statements to that effect, the court will, in its discretion, allow Byrd

the opportunity to counter with specific instances where Equifax's systems failed.

II.     Equifax's Omnibus Motion in Limine

The court ruled on Equifax's motions numbered 3, 4, 5, 6, 7, 9, 10, 12, 13, 14, 15, 16, 17, and 18 at the June 17 hearing and the reasons for those rulings are adequately stated on the record and will not be repeated here. The court took under advisement Equifax's motions numbered 1, 2, 8, and 11. Motions 1 and 2 concern Byrd's ability to make argument or offer evidence concerning disputes between Byrd and Equifax predating two or five years from the date of the complaint—those periods representing the periods of limitation and repose, respectively. See 15 U.S.C. § 1681p ("An action to enforce any liability created under this subchapter may be brought . . . (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs."). In motion number 8, Equifax seeks to exclude evidence of claims for loss of opportunity to receive credit, invasion of privacy, and interference with Byrd's normal and usual activities. Motion number 11 aims to prevent the admission into evidence of a 1994 agreement between Equifax and the Federal Trade Commission ("FTC") and a 1992 agreement between Equifax and various state attorneys general.

    A.    Admissibility of Evidence and Permissibility of Argument Relating to Events Predating the Periods of Limitation and Repose

The admissibility of evidence prior to March 10, 2004, presents a difficult issue in this case. Without some sort of context for the jury to place the events that occurred within the

3

statute of limitations, the jury will not be given the whole story. However, the court finds that in this case removing the whole story from the jury is necessary to prevent undue prejudice to Equifax and jury confusion. Byrd allegedly has 25 troubled years of history with the various credit reporting agencies. He seeks to offer this history, solely as it involves Equifax, as evidence going to the reasonableness of its procedures in assembling his credit report. In support of his evidence, Byrd cites to Bryant v. TRW, Inc., 487 F. Supp. 1234 (E.D. Mich. 1980) and Lazar v. Trans Union, LLC, 195 F.R.D. 665 (C.D. Cal. 2000), for the proposition that such evidence aides the jury in understanding the reasonableness or willfulness of Equifax's conduct—or more generally, to put Equifax's conduct in context. The courts in Bryant and Lazar both found that evidence going beyond the FCRA's 2 year statute of limitations was necessary to provide context and give the jury a basis for evaluating the reasonableness of the credit reporting agency's decision in its respective case. The court finds those court's decisions persuasive and also finds that evidence of the past relationship between the parties "relevant to a determination of whether defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of information." Bryant, 487 F. Supp. at 1236. Because of "the individualized nature of a § 1681e(b) claim, this history is crucial to the jury's understanding of the evidence." Lazar, 195 F.R.D. at 671. Accordingly, the court finds it necessary to allow Byrd to provide some context to the jury, the question is how much.

The Bryant court went back 6 years, and the Lazar court ventured back approximately

9 years. Byrd asks this court to go back 25 years to provide context for the purpose of assessing reasonableness. This the court will not do. Concerns of undue prejudice, relevance, and confusion compel the finding that the entire 25 year period not be admitted into evidence. Fed. R. Evid. 402, 403. The court will, however, allow evidence of the parties relationship beginning with Byrd's alleged call to Equifax in May of 2002. The court finds that Byrd's notifying Equifax of issues with his credit report beginning at this time is relevant to an assessment of the reasonableness of the procedures by which Equifax created the admittedly erroneous 2008 credit report. This temporal limitation is in line with Bryant and Lazar and the court finds that, with a proper limiting instruction to the jury, the admittance of the evidence should not unduly prejudice Equifax. The court defers all other rulings concerning the admissibility of evidence to prove each event—challenges to such evidence will require a contemporaneous objection.

As the events beyond March 2004 relate to damages: the court will allow Equifax-specific events, assuming no other evidentiary ailment, back to May 2002, and events prior to May 2002, without reference to a specific credit reporting agency, to provide context for any emotional distress suffered during the limitations period. Again, the court will provide a proper limiting instruction to the jury to guard against its awarding any damages suffered outside of the limitations period.

B.      Appropriate Components of Damages under the FCRA

In its 8th motion in limine, Equifax seeks to prevent Byrd from arguing that "loss of

5

opportunity to receive credit, invasion of privacy, and interference with Plaintiff's normal and usual activities" constitute separate elements of damages under the FCRA. Under the FCRA a plaintiff may recover damages actual and punitive damages. 15 U.S.C. §§ 1681n, 1681o. The Fourth Circuit has held that actual damages include "not only economic damages, but also damages for humiliation and emotional distress." Sloane v. Equifax, 510 F.3d 495, 500. The court initially notes that loss of opportunity to receive credit, absent some evidence that Byrd actually applied for and was denied credit because of an error in an Equifax credit report, is too speculative to support a claim for economic damages. The court also agrees with Equifax that invasion of privacy and interference with normal and usual activities are not separately compensable claims. However, such characterizations represent useful shorthand for Byrd in describing his emotional damages. The court notes that such shorthand will not suffice at trial and would like to highlight to the following language from Sloane concerning emotional damages:

> We have warned that not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims. For this reason, although specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements. Thus, we have distinguished between plaintiff testimony that amounts only to conclusory statements and plaintiff testimony that sufficiently articulates true demonstrable emotional distress.

510 F.3d at 503 (internal citation and punctuation omitted). No matter whether Byrd felt that his privacy was invaded and his life interrupted, he must articulate demonstrable emotional

6

distress accompanying those feelings to state a claim for damages. Equifax's motion seeking to bar evidence of such shorthand characterizations of emotional distress is therefore denied. The court will endeavor to make clear to the jury that such descriptions do not constitute additional claims.

C. Equifax's Settlements with the Government

The court will review these matters over the weekend and provide counsel with a ruling prior to trial on June 21, 2010.

III. Conclusion

Based on the foregoing, the court hereby (1) excludes any testimony regarding the general accuracy of Equifax's procedures; (2) allows pre-2008 events to the limited extent and for the limited purposes stated in this order; (3) cautions Byrd to heed Sloane in seeking to prove emotional damages; and (4) advises the parties that a ruling on the admissibility of government settlements will be forthcoming on June 21, 2010, prior to trial.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

June 18, 2010  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge